Bradley J. Luck
Isaac M. Kantor
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Telephone (406) 523-2500
Telefax (406) 523-2595
bjluck@garlington.com
imkantor@garlington.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WESTERN HERITAGE INSURANCE COMPANY, an Arizona corporation,<br><br>Plaintiff,<br><br>v.<br><br>SLOPESIDE CONDOMINIUM ASSOCIATION, INC., a Montana corporation, MATTHEW FOLKMAN, individually and d/b/a JARAS CONSTRUCTION,<br><br>Defendants. | COMPLAINT FOR DECLARATORY RELIEF |

Plaintiff Western Heritage Insurance Company ("Western Heritage"), by and through its undersigned counsel, alleges as follows:

//

# I.     PARTIES, JURISDICTION, AND VENUE

1.     This is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.  This court has diversity jurisdiction under 28 U.S.C. § 1332.  Additionally, this court has jurisdiction for providing declaratory relief under 28 U.S.C. § 2201.

2.     Venue is proper in the District of Montana, Missoula Division, as the Defendants are a Montana corporation and/or reside in Bigfork, Montana, and the events giving rise to this dispute took place in Whitefish, Montana.

3.     Plaintiff Western Heritage is an Arizona corporation with its principal place of business in Scottsdale, Arizona.

4.     Defendant Slopeside Condominium Association, Inc. ("Slopeside") is a Montana corporation.

5.     Defendant Matthew Folkman d/b/a Jaras Construction is an individual residing in Bigfork, Montana.

# II.     FACTUAL ALLEGATIONS

**A.     The Policy**

6.     Western Heritage issued Matthew Folkman d/b/a Jaras Construction three Commercial General Liability insurance policies during the relevant times leading to this action:  (1) Policy Number SCP0886254, effective January 25, 2012 to January 25, 2013; (2) Policy Number CPS1878638, effective September 19,

2360344                                                                                                                                        2

2013 to September 19, 2014; and (3) Policy Number CPS2091107, effective January 25, 2014 to January 25, 2015 (collectively, the "Policies").  Policy, No. SCP0886254, attached as Ex. A; Policy, No. CPS1878638, attached as Ex. B; Policy, CPS2091107, attached as Ex. C.

7.   As noted in their declarations pages, the Policies provided commercial general liability coverage to named insured Matt Folkman, d/b/a Jaras Construction, for Coverage A – Bodily Injury and Property Damage Liability.

8.   The relevant portions of the Policies' coverage grant for Coverage A read as follows:

> **SECTION I – COVERAGES**
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.   Insuring Agreement**
> **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:
> **(1)**   The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
> **(2)**   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

2360344                                                                                                        3

> > No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> > **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> >
> > **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
> >
> > **(3)** Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Ex. A, Policy No. SCP0886254, Form CG 00 01 12 07 at 1.

9. Coverage A requires the Insured to perform the following duties in the event of an occurrence, offense, claim or suit:

> **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
>
> . . .
>
> **2.** **Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>
> > **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

2360344

4

   **(1)** How, when and where the "occurrence" or offense took place;
   **(2)** The names and addresses of any injured persons and witnesses; and
   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.
  **b.** If a claim is made or "suit" is brought against any insured, you must:
   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
   **(2)** Notify us as soon as practicable.
   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
  **c.** You and any other involved insured must:
   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
   **(2)** Authorize us to obtain records and other information;
   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Ex. A, Policy No. SCP0886254, Form CG 00 01 12 07 at 10-11.

10. The Policies include the following relevant definitions:

**SECTION V – DEFINITIONS**

      . . .

**8.** "Impaired property" means tangible property, other than "your

2360344  5

product" or "your work", that cannot be used or is less useful because:
a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

. . .

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

16. "Products-completed operations hazard":
   **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
   **(1)** Products that are still in your physical possession; or
   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
   **(a)** When all of the work called for in your contract has been completed.
   **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
   **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
   Work that may need service, maintenance,

2360344    6

           correction, repair or replacement, but which is otherwise complete, will be treated as completed.

17. "Property damage" means:
    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b. Loss of use of tangible property that is not physical injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

                              • • •

21. "Your product":
    a. Means:
        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
            (a) You;
            (b) Others trading under your name; or
            (c) A person or organization whose business or assets you have acquired; and
        (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
    b. Includes:
        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
        (2) The providing of or failure to provide warnings or instructions.
    c. Does not include vending machines or other property rented to or located for the use of others but not sold.
22. "Your work":
    a. *Means*:
        (1) Work or operations performed by you or on your behalf; and
        (2) Materials, parts or equipment furnished in connection with such work or operations.

2360344                                                                                             7

      **b.**    ***Includes***:
            **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
            **(2)**    The providing of or failure to provide warnings or instructions.

Ex. A, Policy No. SCP0886254, Form CG 00 01 12 07 at 12-16 (emphasis added in bold & italics).

11.    Coverage A contains, in pertinent part, the following limitation regarding attorneys' fees:

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.**    We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

              • • •

    **e.**    ***All*** court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

Ex. A, Policy No. SCP0886254, Form CG 00 01 12 07 at 8 (emphasis added in bold & italics).

12.    Coverage A contains, in pertinent part, Exclusion "k" – Damage to Your Product, Exclusion "l" – Damage to Your Work, and Exclusion "m" – Damage To Impaired Property Or Property Not Physically Injured, which states as follows:

    **2.**    **Exclusions**
           This insurance does not apply to:

2360344                                                        8

      **k.**    **Damage To Your Product**
           "Property damage" to "your product" arising out of it or any part of it.

      **l.**    **Damage To Your Work**
           "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
           This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

      **m.**    **Damage To Impaired Property Or Property Not Physically Injured**
           "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
           (1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
           (2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
           This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Ex. A, Policy No. SCP0886254, Form CG 00 01 12 07 at 2, 5.

**B.**    **The Subcontract Agreement, Civil Complaint and Summary Judgment**

      13.    Western Heritage is informed and believes, and based thereon alleges, that Matthew Folkman ("Folkman") performed the subject work personally, without the use of subcontractors, under the trade name, Jaras Construction.

      14.    On September 29, 2011, Folkman entered into a Subcontract Agreement (the "Agreement") with Slopeside to install a thermal tech "T-Panel" system (the "System") on Slopeside's roofs, which was meant to melt snow/ice.

2360344                              9

The Agreement included a ten-year limited warranty. Compl. Breach Contract; Common Counts, Nov. 16, 2016 ("Underlying Compl."), Ex. A: Subcontract Agt., Sept. 29, 2011, attached as Ex. D. On January 30, 2012, a Certificate of Liability Insurance identifying Jaras Construction, Matt Folkman, DBA, as an insured, and Slopeside Owners Association, as a certificate holder, was issued.

15. After Folkman installed the System, Slopeside's counsel, Michael Ferrington ("Ferrington"), made various attempts to contact Folkman, via emails, letters and telephone calls, to perform repairs under the warranty. Folkman allegedly never responded to Ferrington.

16. Since Folkman allegedly never responded, Slopeside hired another contractor and filed a Complaint against Folkman in Montana Eleventh Judicial District Court, Flathead County, cause number DV-16-963(a), on November 16, 2016 (the "Underlying Action"). Underlying Compl.

17. Folkman filed in the Underlying Action an Answer on January 6, 2017, in which he admitted to entering into the Agreement with Slopeside, but denied that he breached the written contract or warranty.

18. On February 28, 2017, Slopeside sought discovery in the Underlying Action in the form of Interrogatories, Requests for Production and Requests for Admission. Folkman allegedly did not respond to these discovery requests.

19. On March 21, 2017, Folkman's counsel, Benjamin Hammer

2360344                                                                                        10

("Hammer"), filed in the Underlying Action an Unopposed Motion to Withdraw as Counsel, which was granted on March 23, 2017.

20. After Hammer withdrew as counsel, Folkman was sent two Montana Rule of Civil Procedure Rule 10 Notices, on March 30, 2017 and April 13, 2017, informing him of pending discovery requests and that he was required to appoint another attorney or appear in person for further matters related to the Underlying Action, and that if he did not, the action would proceed and could result in a judgment against him.

21. On June 12, 2017, Slopeside filed in the Underlying Action a Notice of Matters Deemed Admitted based on Folkman's alleged failure to respond to discovery requests, which was granted.

22. On June 24, 2017, Slopeside filed in the Underlying Action a Motion for Summary Judgment seeking damages in the amount of $441,770.83, based on the pleadings and affidavits in support of its motion, including the matters deemed admitted. Western Heritage is informed and believes, and based thereon alleges, that Slopeside seeks damages in excess of $75,000. Underlying Action: Mot. Summ. J.; Br. Support, June 24, 2017 ("Mot. Summ. J."); Aff. Support Pl.'s Mot. Summ. J. (Leslee (Joey) Meyer), July 5, 2017 ("Aff. Meyer"), attached as Ex. F; Aff. Support Pl.'s Mot. Summ. J. (Michael A. Ferrington), July 18, 2017 ("Aff. Ferrington"), attached as Ex. G.

23. Slopeside's Motion for Summary Judgment included affidavits from Ferrington and Slopeside's manager, Joey Meyer ("Meyer"), in support of its analysis of attorney's fees and damages. In his affidavit, Meyer attached exhibits which purported to show the repairs required to be performed to the System as a result of Folkman's alleged defective installation. Aff. Ferrington ¶ 4; Aff. Meyer ¶¶ 2-4, Exs. A-C.

24. Only July 21, 2017, Ferrington sent Western Heritage and its coverage counsel, Selman Breitman LLP, a letter informing them of this case and attached a copy of the Motion for Summary Judgment. Ferrington's July 21, 2017 letter was the first notice Western Heritage had of this action. Prior to this notice, Western Heritage could not investigate, locate witnesses, appoint counsel, engage in discovery, negotiate a settlement, develop a trial strategy or timely oppose the Summary Judgment Motion.

25. At no time did Folkman tender this claim to Western Heritage, seek a defense, or in any way inform Western Heritage of Slopeside's claim. Western Heritage has also only recently been able to contact Folkman for assistance, as required under the Policies.

26. The deadline for Western Heritage to respond to Slopeside's Motion for Summary Judgement was July 18, 2017, which lapsed prior to Western Heritage's being informed of the Underlying Action.

27. On July 31, 2017, the court granted Slopeside's Motion for Summary Judgment, including the damages requested. Judgment was entered. Underlying Action: Order & Rationale & Final J. Pl.'s Mot. Summ. J., July 231, 2017 ("J."), attached as Ex. H; Notice Entry J., Aug. 4, 2017, attached as Ex. I.

28. On September 19, 2017, Western Heritage sent Folkman a Reservations of Rights letter detailing Western Heritage's coverage position, and informing him that Western Heritage is seeking to set aside the judgment and would be providing him a defense, to the extent possible, under a reservation of rights. Western Heritage specifically reserved its rights to seek reimbursement of defense costs with respect to the Underlying Action. Western Heritage assigned Folkman the following defense counsel:

> Bob Pfennigs
> Jardine, Stephenson, Blewett & Weaver, P.C. (Jardine Law)
> Mailing Address: P.O. Box 2269, Great Falls, MT 59403
> Office Location: 300 Central Ave., 7th Floor, Great Falls, MT 59401
> Telephone: (406) 727-5000
> Email: bpfennigs@jardinelaw.com

Ltr. from Alan B. Yuter, on behalf of Western Heritage, to Matthew Folkham (Sept. 19, 2017), attached as Ex. J.

29. On September 27, 2017, Western Heritage was informed that Slopeside had substituted counsel from Ferrington to Sean Frampton ("Frampton") of the Frampton Purdy Law Firm. In Frampton's correspondence, he indicated he was not interested in seeking to set aside the judgment unless Western Heritage

2360344                                                                                       13

was waiving all coverage defenses.

C.     **The Policies' Limitations and Exclusions**

30.    When Folkman first became aware of the Underlying Action, he was required, under the Policies, to inform Western Heritage. Folkman's lack of notice was in breach of his duties under the **"Duties In The Event of Occurrence, Offense, Claim Or Suit"** provision of the Policies, and has materially prejudiced Western Heritage's handling of the Underlying Action. Ex. A, Policy No. SCP0886254, Form CG 00 01 12 07 at 10-11.

31.    Slopeside's Underlying Complaint sought damages for attorneys' fees and expenses, which were awarded in the Judgment. Underlying Compl. 4; J. ¶ 2. However, as detailed above, the Policies' **"Supplementary Payments"** provision of the policy clearly excludes coverage for attorneys' fees or attorneys' expenses. Ex. A, Policy No. SCP0886254, Form CG 00 01 12 07 at 8.

32.    In the Underlying Complaint and the affidavits Slopeside filed in conjunction with its Motion for Summary Judgment, the damages listed included damages which may have occurred outside of the Policies' policy periods. Therefore, as detailed above, the Policies provide no coverage for alleged damage that occurred outside of the policy periods, including future damage.

33.    In the Underlying Complaint and the affidavits Slopeside filed in conjunction with its Motion for Summary Judgment, most, if not all, of the

damages alleged are not considered "property damage," as defined in the Policies. Therefore, the Policies provide no coverage for alleged damage that does not meet the definition of "property damage" or any other covered damage.

34. In the Underlying Complaint and the affidavits Slopeside filed in conjunction with its Motion for Summary Judgment, much of the damages asserted stem from the alleged defective installation of the System. Most, if not all, of these damages meet the Policies' definition of "your product" and are thus excluded from coverage under Exclusion "k" – Damage To Your Work. Ex. A, Policy No. SCP0886254, Form CG 00 01 12 07 at 5.

35. In the Underlying Complaint and the affidavits Slopeside filed in conjunction with its Motion for Summary Judgment, much of the damages asserted arose from Folkman's alleged defective work which occurred after the work was completed. Most, if not all, of these damages meet the Policies' definition of "your work" and are thus excluded from coverage under Exclusion "l" – **Damage To Your Work**. Ex. A, Policy No. SCP0886254, Form CG 00 01 12 07 at 5.

36. In the Underlying Complaint and the affidavits of Slopeside filed in conjunction with its Motion for Summary Judgment, much of the damages asserted arose from Folkman's alleged defective work or product which allegedly caused "property damage" to "impaired property" or arose out of Folkman's alleged failure to perform his contract and are thus excluded from coverage under

Exclusion "m" – **Damage To Impaired Property Or Property Not Physically Injured**. Ex. A, Policy No. SCP0886254, Form CG 00 01 12 07 at 5.

### III. COUNT I
### (For Declaratory Relief, Against All Defendants)

37. Western Heritage realleges and incorporates by reference all preceding Paragraphs above, in their entirety, as though fully set forth here.

38. Western Heritage has no duty to defend or indemnify in the Underlying Action because Folkman's lack of notice has materially prejudiced Western Heritage's handling of the Underlying Action.

39. Western Heritage is informed and believes, and based thereon alleges, that some or all of the Defendants dispute Western Heritage's contentions.

40. As such, an actual controversy exists that requires a judicial declaration to determine the respective rights and obligations of the parties.

### IV. COUNT II
### (For Declaratory Relief, Against All Defendants)

41. Western Heritage realleges and incorporates by reference all preceding Paragraphs above, in their entirety, as though fully set forth here.

42. Western Heritage has no duty to defend or indemnify in the Underlying Action, in whole or in part, because the damages alleged are not covered for the reasons set forth above.

43. Western Heritage has no duty to defend or indemnify, in whole or in

part, because the damages alleged are excluded from coverage for the reasons set forth above.

44. Western Heritage is informed and believes, and based thereon alleges, that some or all of the Defendants dispute Western Heritage's contentions.

45. As such, an actual controversy exists that requires a judicial declaration to determine the respective rights and obligations of the parties.

## V. PRAYER FOR RELIEF

1. On Counts I and II, for Declaratory Relief, for a judicial declaration that Western Heritage has no duty to defend or indemnify, in whole or in part, in connection with the Underlying Action.

2. For costs of suit;

3. For reimbursement of its defense costs, including attorney's fees, paid to defend the Underlying Action;

4. For pre-judgment and post-judgment interest; and

5. For such other relief as the Court deems just and proper.

DATED this 20th day of November, 2017.

                            /s/ Bradley J. Luck
                           Attorneys for Plaintiff