Fred Simpson, Esq.
CAPP, JENKS & SIMPSON, P.C.
1821 S. Avenue W., Suite 400
Missoula, MT 59803
Telephone: (406) 549-2322
Facsimile: (406) 549-2707
Email: fsimpson@cjs.legal

*Attorneys for Defendant*
*Slopeside Condominium Association, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WESTERN HERITAGE INSURANCE COMPANY, an Arizona corporation, and SCOTTSDALE INSURANCE COMPANY, an Ohio corporation,<br><br>　　　Plaintiff,<br><br>　vs.<br><br>SLOPESIDE CONDOMINIUM ASSOCIATION, INC., a Montana corporation, MATTHEW FOLKMAN, individually and d/b/a JARAS CONSTRUCTION,<br><br>　　　Defendants. | Cause No. CV 17-00162-DLC<br><br>**DEFENDANT SLOPESIDE'S STATEMENT OF DISPUTED FACTS** |

Defendant Slopeside Condominium Association, Inc. submits this Statement of Disputed Facts in opposition to Plaintiffs Western Heritage Insurance Company's and Scottsdale Insurance Company's Motion for Summary Judgment.

1.  Western Heritage and Scottsdale issued Matthew Folkman d/b/a Jaras

1

Construction (Folkman) the following Commercial General Liability insurance policies: (1) Western Heritage Policy Number SCP0886254, effective January 25, 2012 to January 25, 2013; (2) Scottsdale Policy Number CPS1878638, effective September 19, 2013 to September 19, 2014; and (3) Scottsdale Policy Number CPS2091107, effective September 19, 2014 to September 19, 2015 (collectively "Policies"). *See* Statement of Stipulated Facts ¶ 1, May 18, 2018 (Doc. 20); Am. Compl. Declaratory Relief ¶ 7, Apr. 12, 2018, Exs. A, B, and C (Doc. 13). As noted in their declarations pages, the Policies provided commercial general liability coverage to named insured Matt Folkman, d/b/a Jaras Construction, for Coverage A – Bodily Injury and Property Damage Liability. Doc. 13-1 at 6; Doc. 13-2 at 4; Doc. 13-3 at 4.

*Undisputed.*

2. The relevant provisions of the Policies are substantially identical. The coverage grant for Coverage A is:

> **SECTION I – COVERAGES**
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We

2

          may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)**    The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      **(2)**    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

          No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.**    This insurance applies to "bodily injury" and "property damage" only if:

      **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

      **(3)**    Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Doc. 13-1 at 15; Doc. 13-2 at 9; Doc. 13-3 at 9.

      *Undisputed.*

3.    Under Coverage A, the Policies include the following definitions:

**SECTION V – DEFINITIONS**

3

. . .

**8.**    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
   **a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
   **b.**    You have failed to fulfill the terms of a contract or agreement;
if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

. . .

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**16.**    "Products-completed operations hazard":
   **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
      **(1)**    Products that are still in your physical possession; or
      **(2)**    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
         **(a)**    When all of the work called for in your contract has been completed.
         **(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
         **(c)**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the

4

        same project.
Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

17. "Property damage" means:
    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b. Loss of use of tangible property that is not physical injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

        . . .

21. "Your product":
    a. Means:
        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
            (a) You;
            (b) Others trading under your name; or
            (c) A person or organization whose business or assets you have acquired; and
        (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
    b. Includes:
        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
        (2) The providing of or failure to provide warnings or instructions.
    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":
    a. Means:
        (1) Work or operations performed by you or on your behalf; and

        **(2)**    Materials, parts or equipment furnished in connection with such work or operations.
    **b.**    Includes:
        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
        **(2)**    The providing of or failure to provide warnings or instructions.

Doc. 13-1 at 27-30; Doc. 13-2 at 21, 23-24; Doc. 13-3 at 21, 23-24.

*Undisputed.*

4.    Coverage A under the Policies also includes the following exclusions from coverage:

    **2.**    **Exclusions**
    This insurance does not apply to:

        • • •

    **j.**    **Damage To Property**
    "Property damage" to:

        • • •

        **(5)**    That particular part of real property on which you or any contractors or subcontractors working director or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
        **(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

        • • •

    Paragraph (6) of this exclusion does not apply to "property damage" included in the "products completed operations hazard".

6

  **k.** **Damage To Your Product**
    "Property damage" to "your product" arising out of it or any part of it.

  **l.** **Damage To Your Work**
    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
    This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

  **m.** **Damage To Impaired Property Or Property Not Physically Injured**
    "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
    **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
    **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
    This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Doc. 13-1 at 16, 18-19; Doc. 13-2 at 10, 12-13; Doc. 13-3 at 10, 12-13.

*Undisputed.*

5. Coverage A also includes the following limitation regarding attorney's fees and expenses:

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

     • • •

  **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees

7

>  or attorneys' expenses taxed against the insured.

Doc. 13-1 at 22; Doc. 13-2 at 16; Doc. 13-3 at 16.

*Undisputed.*

6. On September 29, 2011, Folkman entered into a "Subcontract Agreement" (the "Agreement") with Slopeside to install a thermal tech "T-Panel" system on the roofs of certain Slopeside buildings. The "T-Panel" system was meant to melt snow/ice. Doc. 20 ¶ 2.

*Undisputed.*

7. Slopeside filed a Complaint against Folkman in Montana Eleventh Judicial District Court, Flathead County, Cause Number DV-16-963A, on November 16, 2016, related to damages allegedly caused by Folkman to Slopeside property (the "Underlying Action"). Doc. 20 ¶ 3.

*Undisputed.*

8. More specifically, the Underlying Action alleged breach of contract and negligence. For both claims the damages at issue are similar. The damages are alleged to be "defective work," "damages caused to property," and "failing to properly install . . . and by failing to timely repair the system . . . causing damage to Plaintiff's property . . . ". Doc 13-4 ¶¶ 4, 8.

*Undisputed.*

9. On June 12, 2017, Slopeside filed in the Underlying Action a Notice of Matters Deemed Admitted based on Folkman's alleged failure to respond to

discovery requests. Folkman's counsel had withdrawn on March 23, 2017, and Folkman had not retained another attorney. Doc. 20 ¶ 4.

*Undisputed.*

10. On June 27, 2017, Slopeside filed in the Underlying Action a Motion for Summary Judgment, based on the pleadings and affidavits in support of its motion, including the matters deemed admitted, and affidavits to be filed. Slopeside filed the Affidavit of Leslee (Joey) Meyer in Support of Plaintiff's Motion for Summary Judgment on July 6, 2017. Slopeside filed the Affidavit of Michael A. Ferrington in Support of Plaintiff's Motion for Summary Judgment on July 18, 2017. Doc. 20 ¶ 5.

*Undisputed.*

Ms. Meyer's affidavit indicated she was a representative of Slopeside in charge of accounting. Doc. 13-6 ¶ 1. She stated that certain exhibits attached to the affidavit indicated the damages suffered by Slopeside, which represented, "the total estimated cost and damages relating the correction of the faulty work performed by Defendants . . . ." Doc. 13-6 ¶ 2. This included photographs of, "the negligent work and completed product" that were representative of the "work and completed product provided on all units at Slopeside . . . ." Doc. 13-6 ¶ 2. Additionally, Ms. Meyer's indicated that Exhibit B to her affidavit was a summary of "additional damages caused through Defendants [sic] negligent performance and damage to property" including ice removal costs and resulting roof damage.

Doc. 13-6 ¶ 3.  Finally, Ms. Meyer's identified costs and attorney's fees incurred. Doc. 13-6 ¶ 4.  Total damages alleged were $441,770.83.  Doc. 13-6 ¶ 5.

*Disputed* in that the facts are incomplete as stated.  Ms. Meyer's affidavit also provides that:

> Attached hereto as Exhibit 'B' to this affidavit is a summary including additional damages caused through Defendants negligent performance and damage to property including ice removal costs by hiring laborers to physically remove snow and ice that accumulated due to the improperly installed system; damage to the roofs also occurred as a direct and proximate result of the physical removal and the costs are accurately set forth herein.

Doc. 13-6 at 2.

11.     The Exhibits to Ms. Meyer's affidavit identify repair costs, snow and ice removal costs, and legal fees and costs.  Doc. 13-6 at 5-6.  The photographs attached identified numerous discovered instances of faulty work.  Doc. 13-6 at 7-20.

*Undisputed.*

12.     On July 21, 2017, Slopeside's attorney, Michael Ferrington (Ferrington), sent Concorde General Agency, Inc., a letter informing it of the Underlying Action and attached a copy of the proposed "Order and Rationale and Final Judgment on Plaintiff's Motion for Summary Judgment."  Doc. 20 ¶ 6.

10

*Undisputed.*

13. On July 31, 2017, the court in the Underlying Action entered the Order and Rationale and Final Judgment on Plaintiff's Motion for Summary Judgment. Doc. 20 ¶ 7; Doc. 13-8. The Court's judgment states:

> Plaintiff has incurred damages as set forth within its complaint and which have been itemized as follows:
>
> 1) Pursuant to the unrefuted affidavit of Leslee Meyer, the sum of $441,770.83 has been sufficiently proven which includes $436,040.37 in damages including repair costs and estimated costs of repair of the balance of units of Plaintiff, including damages to property caused by the negligence of Defendant, plus Court costs and attorney fees identified as being in the amount of $5,730.46.

Doc. 13-8 at 1-2.

*Undisputed.*

14. On August 4, 2017, Ferrington, on behalf of Slopeside, served Folkman with a Notice of Entry of Judgment. Doc. 20 ¶ 8.

*Undisputed.*

15. On September 19, 2017, Western Heritage, through its counsel Alan B. Yuter, sent Folkman a Reservations of Rights letter detailing Western Heritage's coverage position and informing him that Western Heritage would be providing him a defense, to the extent possible, under a reservation of rights. Western Heritage specifically reserved its rights "to seek an allocation and/or reimbursement of defense costs paid to defend allegations, claims and causes of

11

action not covered under the Policies" from Folkman with respect to the Underlying Action. Doc. 20 ¶ 9.

*Disputed.* The letter from the Insurers' counsel, Alan B. Yuter, to Mr. Folkman, conditioned the defense upon an agreement that Slopeside set aside its Judgment. The letter states, in pertinent part:

> We are requesting that Slopeside set aside the Judgment. If they do so, this would allow the Company to defend you, but coverage will still be limited by uncovered damages, as set forth below. If it is not possible to set aside the Judgment, the Company then respectfully declines coverage, as your lack of notice has materially prejudiced the Company in this claim.
> Should the Judgement be set aside, the Company has assigned the following defense counsel for you: [providing the name and contact information for Bob Pfennigs and his firm]."

Doc. 13-10 at 2.

16. Western Heritage has retained Montana defense counsel, Bob Pfennigs, to represent Folkman with respect to Slopeside's claim. Doc. 13-10 at 2.

*Disputed.* The letter from the Insurers' counsel, Alan B. Yuter, to Mr. Folkman, conditioned the hiring of Mr. Pfennigs upon an agreement that Slopeside set aside its Judgment. The letter states, in pertinent part:

> We are requesting that Slopeside set aside the Judgment. If they do

12

so, this would allow the Company to defend you, but coverage will still be limited by uncovered damages, as set forth below. If it is not possible to set aside the Judgment, the Company then respectfully declines coverage, as your lack of notice has materially prejudiced the Company in this claim.

Should the Judgement be set aside, the Company has assigned the following defense counsel for you: [providing the name and contact information for Bob Pfennigs and his firm]."

Doc. 13-10 at 2.

17. Other facts upon which Slopeside relies in opposition to Western Heritage's and Scottsdale's Motion are set forth in Slopeside's Statement of Undisputed Facts (November 9, 2018).

DATED this 9th day of November, 2018.

                        CAPP, JENKS & SIMPSON, P.C.

                        By   /s/ Fred Simpson
                            Fred Simpson
                            *Attorneys for Defendant*
                            *Slopeside Condominium Association, Inc.*

CERTIFICATE OF SERVICE

I certify on this 9th day of November, 2018, a copy of the foregoing document was served upon the following persons by the following means:

| | |
|---|---|
| 1-2 | CM/ECF |
| 3 | Mail |
| | Hand Delivery |
| | Overnight Delivery Service |
| | Fax |
| | Email |

1. Clerk, U.S. District Court

2. Bradley J. Luck
   Isaac M. Kantor
   GARLINGTON, LOHN & ROBINSON, PLLP
   350 Ryman Street, P.O. Box 7909
   Missoula, MT 59807-7909
   bjluck@garlington.com
   imkantor@garlington.com

3. Matt Folkman
   179 Tree Farm Trail
   Bigfork, MT 59911


                    CAPP, JENKS & SIMPSON, P.C.

                    By  /s/  Fred Simpson
                    *Attorneys for Defendant*
                    *Slopeside Condominium Association, Inc.*