IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WESTERN HERITAGE INSURANCE COMPANY, an Arizona corporation,<br><br>Plaintiff,<br><br>v.<br><br>SLOPESIDE CONDOMINIUM ASSOCIATION, INC., a Montana corporation, MATTHEW FOLKMAN, individually and d/b/a JARAS CONSTRUCTION,<br><br>Defendants. | CV 17–162–M–DLC<br><br><br><br>ORDER |

The parties to this insurance coverage dispute have filed cross-motions for summary judgment. (Docs. 28 & 36.) Defendant Slopeside Condominium Association, Inc. ("Slopeside") attained a judgment against Defendant Matthew Folkman, doing business as Jaras Construction, in the underlying state court action, and it hopes to satisfy that judgment. Plaintiffs Western Heritage Insurance Company and Scottsdale Insurance Company (collectively, "Western Heritage") seek a declaration that Western Heritage has no duty to indemnify Folkman, its insured. Folkman has chosen to represent himself in this matter, and he has not responded to Western Heritage's motion. (See Docs. 43 & 49.) Slopeside seeks

1

partial summary judgment, arguing that the relevant insurance policy provides coverage if Slopeside can prove certain facts.

**BACKGROUND**

Slopeside is a homeowners association responsible for the operation and maintenance of a group of condos in Whitefish, Montana. (Doc. 13-4 at 1.) In September 2011, Folkman and Slopeside entered into a construction agreement. (Doc. 38 at 8.) Folkman agreed to install thermal "T-panel" systems on the roofs of Slopeside buildings to melt snow and ice. (Doc. 38 at 8.) However, the T-panel systems were not effective—not only did they fail to serve their intended purpose, but they created ice buildups and caused additional damages—and Slopeside sued Folkman in state court on November 16, 2016. (Docs. 13-4 & 13-8.)

Folkman initially retained counsel without notifying Western Heritage of the lawsuit, but his counsel withdrew on March 23, 2017. From that point forward, Folkman did not respond to Slopeside's discovery requests or otherwise defend against the action. (Doc. 38 at 8–9.) Slopeside filed a motion for summary judgment on June 27, 2017, to which Folkman did not respond, as well as a proposed order granting summary judgment to Slopeside. (Doc. 38 at 9.) On July 21, 2017, Slopeside's attorney in the underlying action informed Western Heritage of the underlying action, attaching a copy of the proposed order granting summary judgment. (Doc. 38 at 10–11.)

On July 31, 2017, the state court adopted Slopeside's proposed order, awarding Slopeside $441,770.83, comprising $436,040.37 in damages and $5,730.46 in attorneys' fees. (Docs. 13-8; 13-9; 28 at 11.) In awarding damages, the court adopted in full the statement of actual and anticipated expenses submitted by Slopeside's representative. (Docs. 13-6 & 13-8.) Excluding attorneys' fees, the damages awarded included: (1) $68,040.37 in actual expenses as of the date of the state court judgment; and (2) an additional $368,000 in anticipated expenses. (Doc. 13-6 at 6.) The anticipated expenses were calculated by multiplying 23—the number of condo units—by $16,000—the actual expenses incurred in repairing the T-panel system in one of the Slopeside units, rounded down to the nearest $1,000. (Doc. 13-6 at 6.)

Folkman was served with a notice of entry of judgment on August 4, 2017. (Doc. 20 at 3.) On September 19, 2017, Western Heritage sent a letter to Folkman, informing him that Western Heritage would defend Folkman under a reservation of rights if Slopeside would agree to set aside the state court judgment. (Doc. 13-10 at 2.) Because Slopeside refused, Western Heritage declined coverage based on the failure of Folkman to provide timely notice. Western Heritage initiated this lawsuit, seeking a declaration that it had no duty to indemnify Folkman in the underlying action.

During the relevant time, Folkman was insured under three commercial general liability ("CGL") policies. The relevant provisions of the policies are identical. (Doc. 38 at 2–8.)

**LEGAL STANDARD**

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**DISCUSSION**

Because federal jurisdiction is grounded in diversity, the Court looks to Montana law for the "rules of decision." 28 U.S.C. § 1652. "The interpretation of an insurance contract is a question of law." *Babcock v. Farmers Ins. Exch.*, 999

P.2d 347, 348 (Mont. 2000). "If the language of a policy is clear and explicit, the policy must be enforced as written." *Nat'l Farmers Union Prop. & Cas. Co. v. George*, 963 P.2d 1259, 1261 (Mont. 1998). "Ambiguities are construed against the insurer and exclusions from coverage are construed narrowly because they are contrary to the fundamental protective purpose of insurance policies." *Id.* Further, "because exclusions are contrary to the fundamental purpose of the policy, such exclusions are frequently subject to challenge for ambiguity or inconsistency." *Newman v. Scottsdale Ins. Co.*, 301 P.3d 348, 355 (Mont. 2013).

## I. Occurrence

Western Heritage argues that there was no "occurrence" triggering coverage under the policy. The Court disagrees.

The policy provides liability coverage for "bodily injury" and "property damage" caused by an "occurrence," "mean[ing] an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 38 at 4.). Courts employ a two-part test to determine whether an act is an occurrence, addressing: "(1) whether the act itself was intentional, and (2) if so, whether the consequence or resulting harm stemming from the act was intended or expected from the actor's standpoint." *Emp'rs Mut. Cas. Co. v. Fisher Builders, Inc.*, 371 P.3d 375, 378 (Mont. 2016). If the answer to either question is "no," the act is an occurrence. *Id.*

Western Heritage contends that defective workmanship is the basis for Slopeside's claims against Folkman and that defective workmanship is never an occurrence. Western Heritage's position is foreclosed by *Fisher*, in which the Montana Supreme Court clarified that an "occurrence" may be found where "an initial act of intention . . . led to unexpected results. . . ." *Id.* at 380. Here, Folkman's installation of the T-panel system may have been an intentional act, but that is not the end of the inquiry. The Court must also "determine objectively what injuries could reasonably be expected to result from [that] intentional act." *Id.* at 379.

Under *Fisher*, it is the role of the Court to decide whether Folkman intended or expected Slopeside's damages. *Id.* Applying an objective standard, the Court cannot conclude that Folkman intended or expected his installation of the T-panel systems to cause property damage to the Slopeside buildings. Where the Montana Supreme Court has determined that harm was objectively intended or expected, the insured's conduct suggested that the insured had some particular reason to believe that her acts were likely to cause harm. *See id.* (collecting cases); *see, e.g.*, *Landa v. Assurance Co. of Am.*, 307 P.3d 284 (2013) (intentional misrepresentation); *Smith v. State Farm Ins. Cos.*, 870 P.2d 74 (1994) (physical assault); *Am. States Ins. Co. v. Willoughby*, 836 P.2d 37 (1992) (physical assault); *N.H. Ins. Grp. v. Strecker*, 798 P.2d 130 (1990) (sexual molestation). Here, on the other hand,

6

Folkman's work damaged Slopeside's buildings only to the degree that his work was performed negligently. No facts suggest that a contractor in Folkman's position should have expected or been aware of Slopeside's impending damages, even if the damages were foreseeable under the general negligence standard.

The Court finds that Slopeside's damages arose from the unanticipated and unexpected consequences of Folkman's conduct. Folkman's installation of the T-panel systems constitutes an "occurrence," and the underlying dispute between Slopeside and Folkman falls within the policy's insuring agreement.

## II.    Breach of Contract

Western Heritage argues—and Slopeside does not dispute—that there is no coverage to the degree that Slopeside's damages were caused by Folkman's breach of contract. However, Western Heritage does not point to any damages awarded in the underlying suit arising from breach of contract. And the inclusion of a contract-based claim in an underlying complaint is neither unusual nor exceptionable. *See, e.g.*, *Thomas v. Nautilus Ins. Co.*, 2011 WL 4369519 (D. Mont. Aug. 24, 2011) (noting the inclusion in the underlying action of claims for negligence and breach of contract), *findings and recommendation adopted*, 2011 WL 4369496 (D. Mont. Sept. 19, 2011); *accord Penn-Star Ins. Co. v. Coyote Ridge Construction, Inc.*, 2012 WL 631895, *1 (D. Mont. Feb. 27, 2012).

7

Although the Court agrees with the parties that there is no coverage for breach of contract, it cannot grant summary judgment on this ground. While Slopeside brought a claim for breach of contract in the underlying action, the state court judgment mentions only "negligence." (Doc. 13-8.) Western Heritage has not shown that the Court's agreement with its general legal proposition entitles it to relief.

III. **Exclusions j(5) and j(6)**

As a preliminary matter, Slopeside argues that Western Heritage cannot rely on exclusions j(5) and j(6) because Western Heritage did not raise the exclusions in the operative complaint or in its reservation of rights letter to Folkman. And Western Heritage acknowledges its "oversight" in failing to raise exclusions j(5) and j(6) earlier. (Doc. 46 at 9.) However, a failure to raise a policy defense does not constitute waiver unless the insured suffers prejudice. *Portal Pipe Line Co. v. Stonewall Ins. Co.*, 845 P.2d 746, 750 (Mont. 1993); *EOTT Energy Operating Ltd. P'ship v. Certain Underwriters at Lloyd's of London*, 59 F. Supp. 2d 1072, 1078 (D. Mont. 1999). Here, Slopeside has not demonstrated—or even claimed—prejudice, and Western Heritage is not strictly limited to those defenses previously asserted.

Nonetheless, neither exclusion defeats coverage. The parties agree that exclusions j(5) and j(6) apply only to damages that occur during the performance

8

of the insured's work.  (Docs. 46 at 11; 50 at 5.)  Western Heritage has not pointed to any damages that arose while Folkman was performing his work on the condos.

As relevant here, exclusion j(5) exempts from coverage "[t]hat particular part of real property on which you or any contractors or subcontractors working direct[ly] or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations."  (Doc. 38 at 6.)  Looking no further than the terms of the policy, exclusion j(5) does not apply because Folkman was not "performing operations" on the Slopeside condos when Slopeside incurred its damages.  *See also Lukes v. Mid-Continent Cas. Co.*, 2013 WL 496203, at *3 (D. Mont. Feb. 11, 2013) ("[Insured] is no longer performing operations on any part of the . . . home, so Exclusion j(5) does not apply.").

Exclusion j(6) is similarly inapplicable.  Exclusion j(6) provides that the policy does not extend to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it," unless the damages fall under the "products-completed operations hazard" ("PCOH").  (Doc. 38 at 6.)  The installation of the T-panel systems constituted Folkman's "work," which was "incorrectly performed," necessitating that the systems "be restored, repaired or replaced."  Thus, the unambiguous language of the policy excludes coverage for remediation of at least a "particular part" of the Slopeside units unless the property damage falls under the PCOH provision.  This

9

Court recently addressed a similar issue in *Northland Casualty Company v. Mulroy*, 2019 WL 174568, at *7, noting that "[t]he applicability of the PCOH provision depends on timing; if the damage occurred after [the insured] completed its work, then the PCOH provision is in play, and [the insurer] cannot rely on exclusion j(6)."

The PCOH "[i]ncludes all . . . 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) products that are still in your physical possession; or (2) work that has not yet been completed or abandoned . . . ." (Doc. 38 at.) Property damage occurs when there is "physical injury to or loss of use of tangible property." *Truck Ins. Exch. v. O'Mailia*, 343 P.3d 1183, 1886 (Mont. 2015). Here, there was no "physical injury" to the Slopeside units until after Folkman's work was completed. Slopeside's damages therefore fall under the PCOH provision, and exclusion j(6) does not apply.

## IV. Exclusion l

Exclusion l, "damage to your work," bars coverage for "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" (Doc. 38 at 7.) It "does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." (Doc. 38 at 7.) As discussed immediately above, the property

damage falls under the PCOH.  Slopeside argues that exclusion l is nonetheless inapplicable because: (1) the property damage is not to Folkman's "work," and (2) the "damaged work or work out of which the damage arises" was performed by a subcontractor, Mike Whalen.

The policy defines "your work" as "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts or equipment furnished in connection with such work or operations."  (Doc. 38 at 5–6.)  Slopeside claims that at least some of the property damage was not to Folkman's work because "Folkman's work was limited to installing the T-panels on the Slopeside roofs, but . . . Folkman damaged other parts of Slopeside's property—i.e., because of his negligence, ice dams formed and damaged Slopeside's roofs."  (Doc. 37 at 20.)  Western Heritage does not disagree, contending instead that exclusion m, discussed below, operates to exclude coverage where exclusion l does not apply.  (Doc. 29 at 16.)  As the parties seemingly agree, at least some of the property damage—damage to the T-panel systems and their components—constitutes damage to Folkman's work.

Slopeside argues that exclusion l is nonetheless inapplicable because Folkman hired a subcontractor to install the T-panels.  (Docs. 39 at 8; 40.)  Exclusion l does not apply if "the damaged work or the work out of which the damage arises was performed on [the insured's] behalf by a subcontractor."  (Doc.

11

38 at 7.) Western Heritage does not dispute whether Whalen in fact installed some or all of the T-panels. Rather, it asserts that collateral estoppel applies to prevent Slopeside from offering evidence that Whalen installed the T-panel systems because the state district court entered judgment against Folkman in the underlying action.

The court applies Montana law to determine the applicability of collateral estoppel, as "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . ." *Allen v. McCurry*, 449 U.S. 90, 96 (1980) (citing 28 U.S.C. § 1738). Under Montana law, collateral estoppel prevents relitigation of issues when: "(1) the identical issue raised has been previously decided in a prior adjudication; (2) a final judgment on the merits was issued in the prior adjudication; and (3) the party against whom the plea is now asserted was a party or in privity with a party to the prior adjudication." *Holtman v. 4-G's Plumbing & Heating, Inc.*, 872 P.2d 318, 322 (Mont. 1994).

Here, the first element is not met. In the underlying action, Folkman was assigned all liability for damages caused by the T-panel installation, but the state court decision did not discuss the theory of liability. (Doc. 13-4 at 5.) Under Montana law, a general contractor may be liable for the acts of a subcontractor in some circumstances. *See Beckman v. Butte-Silver Bow Cty.*, 1 P.3d 348 (Mont.

2000). The Court cannot determine that Slopeside is estopped from raising a subcontractor theory now, as there is no basis for determining that the state court rejected that theory. The "identical issue raised has [not] been previously decided." *Holtman*, 872 P.2d at 322.

Neither party is entitled to summary judgment as to exclusion l. Factual disputes remain as to: (1) the degree to which Slopeside's damages are damages to Folkman's "work"; and (2) whether a subcontractor performed the work giving rise to those damages.

## V. Exclusion m

Exclusion m extends to "'[p]roperty damage' to 'impaired property' or property that has not been physically injured, arising out of: (1) [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or (2) [a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." (Doc. 38 at 7.) For its part, "impaired property" is defined as "tangible property, other than 'your product' or 'your work,' that is known or thought to be defective, deficient, inadequate or dangerous . . . if such property can be restored to use by the repair, replacement, adjustment or removal of 'your product' or 'your work' or your fulfilling the terms of the contract or agreement." (Doc. 38 at 4.).

13

Western Heritage is not entitled to summary judgment as to exclusion m. Exclusion m applies only to "impaired property," which does not include an insured's work, and "property that has not been physically injured," which conceivably could include an insured's work but which Western Heritage does not rely upon to defeat coverage. *See Thomas*, 2011 WL 4369519, at *11. As discussed above, a factual dispute remains regarding the degree to which the damages awarded in the underlying action are damages to Folkman's work; any damages to Folkman's work fall strictly under the scope of exclusion l, not exclusion m. Exclusion m is in play only to the extent that Slopeside's damages are not damages to Folkman's work.

Western Heritage has not met its burden of demonstrating the applicability of the exclusion. Western Heritage does not point to specific damages falling under its umbrella; rather, it asserts that any damages that are not addressed under exclusion l are excluded under exclusion m. However, the exclusion needs to be analyzed separately and according to its own terms. Contrary to Western Heritage's arguments, the Court cannot simply determine that, because an insurance policy includes business risk exclusions, all damages resulting from construction work are excluded from coverage.

On its own terms, exclusion m is inapplicable. Again, Western Heritage has not directed the Court to any particular damages falling under the exclusion. And,

under the circumstances, it is difficult to imagine any such damages. "Impaired property" is only that property that can be "restored to use" by performing additional work on the T-panel systems. The policy excludes coverage for "property damage" to the "impaired property," and property damage is defined to mean either: (a) "[p]hysical injury to tangible property, including all resulting loss of use of that property"; or (b) "[l]oss of use of tangible property that is not physically injured." However, "impaired property" does not include physically injured property but only property that can be fully restored by altering the insured's "work" rather than repairing or replacing the impaired property itself. Reading the policy's definitions of "property damage" and "impaired property" in tandem, exclusion m addresses only "loss of use" of the "impaired property"—if the property is "physical[ly] injur[ed]," it is not "impaired."

There is no indication that Slopeside incurred any damages falling within the scope of exclusion m. The Court grants Slopeside's motion for summary judgment as to this issue.

Accordingly, IT IS ORDERED that Plaintiff Western Heritage Insurance Company's motion for summary judgment (Doc. 28) is DENIED.

IT IS FURTHER ORDERED that Defendant Slopeside Condominium Association's Motion for Partial Summary Judgment (Doc. 36) is GRANTED in

part and DENIED in part. The motion is denied as to exclusion l and otherwise granted.

DATED this 6th day of March, 2019.

Dana L. Christensen, Chief District Judge
United States District Court